Good morning, Your Honors, and may it please the Court. My name is Stephen Wainwright, and I represent the petitioner, Hong Li Ru. Before I begin, I'd like to reserve two minutes of time for rebuttal on behalf of my colleague Amy Saweetie. Thank you. If Ms. Ru is sent back to China, then substantial evidence supports her well-founded fear that she will be persecuted or tortured, just like the other pro-democracy activists she has supported since her arrival in the United States. That is why we ask this Court today to reverse the BIA's order and remand for further proceedings, because the BIA committed numerous legal errors, including mischaracterizing Ms. Ru's position and activism within the Chinese Democracy Party, failing to fully consider China's growing pattern and practice of persecution against pro-democracy activists, and finding that Ms. Ru failed to properly preserve her withholding of removal and convention against torture claims, despite being a pro se litigant. Turning first to Ms. Ru's activism, Ms. Ru most notably has donated or supported some of the most high-profile pro-democracy activists who are now either currently under watch by the Chinese government or currently in prison. How do we know that they're under watch by the Chinese government today? Your Honor, this is supported by the record. There's two individuals specifically that she has supported substantially. The first being Mr. Wu Gan, and he is currently in jail and has consistently been tortured or persecuted by the Chinese government. He's in jail in China? Correct, Your Honor. This is noted on pages 691 to 694 AR. By the way, how do we know that the Chinese government knows about Ms. Ru? Your Honor, it's by circumstantial evidence and based on our connections, not only by donating to Mr. Wu Gan, but by supporting Mr. Zhang, who also has been persecuted by the Chinese government and has been detained by the Chinese government. Well, we have cases only that say that just because a person's activities of that type have been publicized, either on the internet or in written publications, is not proof that the government knows about him or her or is watching her? Your Honor, there's cases out of the Second Circuit which are distinguishable about pro-democracy activists regarding the Chinese government. However, given China's advanced surveillance state, there's substantial evidence that they are likely aware, under the Cardozo-Fonseca standard, that there's at least a 10% chance that they are aware of her activities and are currently targeting her. Additionally... Well, you see, the test is not whether there's substantial evidence supporting your position, but whether there's substantial evidence supporting the position of the agency, which means that the agency is not required to draw the inference, is it that because there's been some publicity, this person is under government surveillance? Your Honor, under the standard here, it's whether or not, under the asylum standard, whether or not the Chinese government, whether there's a reasonable possibility that they're going to target Ms. Wu based off of her pro-democracy activities. And based on the certified administrative record, as well as in our motion for judicial notice, it meets that standard, and she should be granted asylum based off of those activities. Can I ask you about the immigration judge's conclusion? The court considers that the totality of information provided by the respondent and finds that the respondent is generally not credible on various issues. The respondent is clearly not credible in saying she genuinely opposes to the government of China and that she is a sincere member and activist for the China Democratic Party. And as one of the examples in finding that Ms. Wu is not credible, she points to what can only be described in the judge's description as a staged photo by Ms. Wu, where she got some people together on downtown Honolulu Street. Two of the individuals were just passing by and were not members of the CDVP. They were Micronesians. She gave them a free white t-shirt and had them pose with her. And the judge says this lowers the probative value of other photos that respondent filed to show her level of involvement in demonstrations. What are we to make of this finding, and how do you overcome it? Your Honor, that finding was made by the immigration judge. However, the BIA did not make an adverse credibility finding. So under this court standard in Ming Dai v. Sessions, as well as Ahmed v. Kaiser, she is presumed credible for purposes of this appeal. Well, I mean, what the BIA said was assuming arguendo, you know, credibility. It did not, it did, the BIA did note that the immigration judge had made an adverse finding, but basically expressed no position on it. So isn't that different, a different posture from other cases where the BIA is silent? No, Your Honor, it would be the same standard as Ming Dai v. Sessions. Even though the judge does note the standard there, she would still be presumed credible for purposes of appeal. And upon remand to the BIA, it could be, they could make an adverse credibility finding if they choose to. However, regarding that activism, I think that further shows that there was no, there was no CDB chapter in Honolulu. And it demonstrates that Ms. Ru was attempting to spread her activism and spread, spread what she believes to be very important to her, which is that democracy should be brought to China. And this is something that the Chinese... Did she become a member of the party the same month that she applied for asylum? Yes, Your Honor. However, Ms. Ru notes that the reason that she applied for asylum was after going to those meetings, she specifically was told that the Chinese government is spying on them. And this was noted on the record on page 995, where Mr. Spied on by whom? By the members of that community and Mr. Zhang, who was contacted by the FBI after he was detained in China, noting that the Chinese government had infiltrated these organizations and were actively seeking out pro-democracy activists in order to crush this uprising and in order to ensure that China, that democracy did not spread to China. This is because China has been persistent in its, in its preservation of the communist government and insistent that pro-democracy activists are not permitted to spread their ideas or allowed to speak freely. And this is what Ms. Ru discusses in her testimony extensively on AR 174 to 180, where she discusses ideas about freedom of speech, freedom of assembly, private capitalism. These are ideas and thoughts that do not occur in China and are not part of the Chinese society. This is all stemmed from Ms. Ru's realization that the big lie, which was the Tiananmen Square massacre, was covered up by the Chinese government, which is why she became an activist. And now why she fears that she is going to be persecuted by the Chinese government. And if there's no further questions, I'd like to reserve the remaining time for rebuttal for my colleague. Yes. Thank you, Your Honor. Thank you. Good morning, Your Honors. Cherise Pratt for the respondent, William P. Barr. May it please the court. Your Honors, it's clear from the record that Ms. Ru has not established that she would suffer from any, that she has not established that there's any individualized evidence that the Chinese government would be aware or likely to become aware or that she is similarly situated to any of the others that she describes. Could I ask you just a preliminary question? Yes. I want to follow up to Judge Katzmann's question, which is the BIA basically, they didn't find it necessary to address the IJ's adverse credibility determination. That's correct. And then they said, but we note that he made an alternative decision, even assuming she was credible. So for our perspective, we assume that she's credible. Isn't that correct? Well, like you said, the BIA did not, didn't reach that. They only affirmed on the alternate burden of proof. Right. So for our purposes of review, reviewing that decision of the BIA that she was credible, were we consider her to be credible? Isn't that right? I think you can consider her to be credible because the BIA didn't. Well, actually, I think what it is, you look to the IJ's decision to supplement what the BIA found. The BIA didn't address that. So you can look at what the immigration judge found as well. Right. I understand that. But for credibility purposes, we just assume that she's credible. Might make a difference here. Um, well, we're reviewing the decision of the BIA. Yes. Because the BIA made its own decision. It didn't adopt a decision of the IJ. In fact, one way it didn't adopt it is it didn't even, you know, it said, right, we don't have to address the credibility. Because we can affirm on an alternate ground. Because this application fails on the merits anyway. Yes. So when the BIA did that, it accepted as truthful the applicant's testimony. Isn't that correct? And we have to do the same. I guess it presumed for the sake of argument that she was truthful and addressed the merits. Okay. Yeah. All right. So, all right. The board does say the immigration judge's findings of fact are not clearly erroneous. Rue. And then says, while the immigration judge considered the respondent's claim, assuming arguendo, her credibility, she was not required. Then it goes on. Yes. And so, looking at it from that perspective, that none of the findings that the immigration judge made were clearly erroneous. There is support that Ms. Rue was not credible. Even her star witness admitted that he has advertised for people how they can get immigration benefits through declaring that they're members of the CDP, like what Rue did here. The people that she compared herself to, they were leaders. They were active on social media. They had nationwide leadership roles. They had performed organizational roles. Ms. Rue cannot say anything of the same. She submits photos where she's sitting at a table with others and where she's in a crowd among many. She doesn't identify who the people are. She has unattributed text below the photos, which she submitted later. She had eight years in removal proceedings when she could have translated the text below the photos and only attempts to submit it to this court. Let me ask you a little different question. There are suggestions in the record that there are several, whether they're related or not, but several Chinese Democratic parties or organizations that go by that name. Isn't that right? Some seem to be more in good faith than others. Is there any way to tell which end of the spectrum this Chinese Democratic Party belongs? So this one, they call themselves the new Chinese Democratic Party because the Chinese Democratic Party was outlawed and banned in China. So it's unclear how much affiliation they have. Ms. Rue testified that she didn't have contact with the people in China with the CDP. There are also suggestions in the record that this Chinese Democratic Party was almost a front for asylum seekers. In the sense that they put advertisements in the paper saying, if you join this party, we'll guarantee you'll get asylum, that kind of stuff. Is there much more in the record on that? Well, it was the fact that the person who put those ads in the paper was her star witness at her removal hearing. And this court in YC has cautioned that pro-democracy claims may be especially easy to manufacture. Any Chinese alien who writes something supportive of democracy or pays for such writing to be published can make a claim. And her claim here is very weak, where she has submitted a few photos where it's very hard to identify her. She doesn't identify who else is in the photos with her. She has this text, but there's no proof they were actually published on YouTube, and that the Chinese actually would be interested in her. What does China do with people who are identified as being members of the CDP or new CDP or whatever, the old CDP? Yes. So China has put people like that in jail. But again, it's been leaders. It's been people who are very active in the organization. Like I said, a nationwide leadership role, socially popular through social media. She hasn't established that she's any of those things. Did the IJ make any finding on this point? Not explicitly. Well, the IJ found that the photo appears to be staged and that her evidence submitted seems that she had more of an economic motivation rather than a genuine political affiliation with CBP. The IJ found that Ms. Ru has not established that members of the CDP who are similarly situated are persecuted upon return to China. Right. Who are similarly situated to her, which is very minimal involvement with the CDP, as opposed to people who had widespread leadership roles, social media presence, activists? We understand your position, I think, regarding the waiver of the removal and CAT claims on appeal. Could you speak to those? Yes. Well, an alien is required to put the board on notice of the specific issues and what and why a general challenge is insufficient. And so what we have here is in her notice to appeal, she says that the IJ made errors, but in her brief, she doesn't address why the withholding denial, why the denial of CAT protection were incorrect. And did she present those claims to the board at any point? She did not present those claims to the board in her brief. She lays it out as a fact that she applied for asylum withholding, a removal, and CAT protection. But her primary challenge was to the credibility determination. Isn't that what happened? Which would go to all those claims? Yes. Is that right? Yes, yes. I can't recall exactly. What do the country condition reports have to say about whether or not China only is concerned about those who are leaders and sort of organizers of the CDP? And is it just to the country condition reports just say, well, that's all China is really concerned about, not low level sort of members out there demonstrating? Does it draw a distinction at all in the country condition reports? From what I can recollect, I don't, I don't recall that the country condition reports said that China is interested in people like Ms. Ru, who have had very minimal involvement with the CDP. Good. So I think this court's holding in YC and in RSD are supportive of the government's position in this case, where someone with the involvement that Ms. Ru had, which was very low level. And like the IJ said, the photos, some of them appear to be staged. And like again, like I said, her witness admitted that he was trying to recruit people into the CDP for the purpose of obtaining immigration benefits. Okay. So ultimately, the board properly concluded that it's unlikely that Ms. Ru would be persecuted upon her, on the basis of her political opinion, if she returns to China. Okay. Thank you. Okay. Thank you very much. Commissioner Hanson, reserve time. Good morning, Your Honors, and may it please the Court. Amy Sweeney, also be on behalf of the petitioner, Hong Li Ru. Three brief points on rebuttal. First, the BIA did not expressly adopt the holding of the IJ. Rather, it reviewed the holding and did not even reach every single point made by the IJ. But what do you make of the sentence, the immigration judge's findings of fact are not clearly erroneous? While the immigration judge considered the respondent's claim, assuming are you under her credibility, she was not required to adopt the inferences from her testimony. Even credible testimony may not be persuasive or sufficient. The immigration judge is entitled to make reasonable inferences from the direct and circumstantial evidence as a whole, such as she did here. Yes, Your Honor. Under SAIL v. Ashcroft, the BIA must make an express credibility finding in order for that sort of conclusion to be drawn, that she is not credible, that she is lying. And because there wasn't an express credibility finding, under Ming Dai, she is presumed credible for this appeal. And the record doesn't... That doesn't mean she's entitled to prevail, though. No, Your Honor, but she's presumed to prevail. As Judge Katzman said, and as the BIA suggests, the IJ is free to draw inferences and to make findings based upon even credible testimony. Yes, Your Honor. And the record leads to inferences that are very clear. Here, first of all, the CDP may have different names in different locations, but on 215 and 216 of the record, we can see that that is for the member's safety, because the members are routinely persecuted in China. Additionally, the wire transfer made from Hongroo was a $1,000 donation to Wugon, to the Chinese Construction Bank. And on page 207 to 205 of the record, we can see that political dissidents like Wugon are routinely persecuted. The Chinese Construction Bank does indicate that it will make reports to the government as necessary. I see that my time has run out. You can finish your points. I'll let you finish your points. Thank you, Your Honor. The donation to Wugon is likely on the government's radar. And additionally, the record does contain information about a, not a leader in the CDP, but a teacher who joined the CDP, returned to China, and was persecuted. And that was on page 959 of the record. And unless this Court has any further questions, I'll submit. Thank you, Counsel. Thank you. Thank you. Thank you all very much. We appreciate the arguments. And thank you for your involvement in our program. Thank you very much. See, our next case for argument is Head v. Wilkie.
judges: Tashima, Paez, Katzmann